REQUESTED BY: Richard M. Glidden, Dundy County Attorney
Does each of the following named entities qualify under F.D.I.C insurance provisions for coverage of their own separate accounts or will some or all of the accounts be consolidated: County Schools, County Hospital, County Treasurer, County Court, Clerk of the District Court, County Extension Office and County Agricultural Society?
It appears more likely than not that each qualifies for coverage.
F.D.I.C. regulations currently provide for coverage of up to $100,000 per account. However, recent newspaper accounts have reported instances in which, although separate accounts were maintained by governmental entities, they were aggregated for insurance purposes thus reducing the total amount of coverage available.
The F.D.I.C. is governed by the Federal Deposit Insurance Act of 1950, Pub.L. No. 81-797, 64 Stat. 873 (FDI Act). Pursuant to this act an insured deposit is defined as the net amount due any depositor, after deducting offsets, less any part thereof in excess of $100,000 as determined by such regulations as the Board of Directors of the F.D.I.C. may prescribe for the "purpose of clarifying and defining the insurance coverage" and to "define, with such classifications and exceptions as it may prescribe, terms used in those subsections" and "the extent of the insurance coverage resulting therefrom." 12 U.S.C. § 1813(m)(1).
Relying upon this congressional authority, the F.D.I.C. has promulgated deposit insurance coverage regulations including 12 C.F.R. § 330 (1983). Section 330.8(a)(2) provides: "Each official custodian of funds of any State of the United States or any county, municipality, or political subdivision thereof depositing the same in time or savings deposits in an insured bank in the same State shall be separately insured up to $100,000." However, another portion of12 U.S.C. § 1813(m)(1) provides: ". . . In determining the amount due to any depositor there shall be added together all deposits in the bank maintained in the same capacity and the same right for his benefit either in his own name or in the names of others. . . ." Thus, while accounts generally are separately insured, under certain circumstances accounts may be aggregated and thereby limit F.D.I.C. insurance coverage.
The F.D.I.C. has adopted regulations in an effort to prohibit "sham" accounts from being established in an effort to expand the amount of deposits covered by F.D.I.C. insurance. In this regard the F.D.I.C. has issued legal opinions to various public entities in an effort to clarify under what circumstances public accounts will be aggregated because of the establishment of a sham custodian for the account. In one such opinion the F.D.I.C. recently stated, We have concluded that, in order to qualify as an `official custodian' under 12 C.F.R. § 330.8, a designee, whether an officer, employee or agent, must have plenary authority (which concludes control) over funds allocated to the public unit which the custodian is appointed to serve. Control of public funds includes possession, as well as the authority to establish accounts for such funds in insured banks and to make deposits, withdrawals and dispersements. The deposit insurance available to a public unit cannot be increased merely by fragmentizing such authority over that unit's funds among several putative official custodians. Similarly, if the exercise of authority or control over the funds of a public unit requires action by or the consent of two or more putative official custodians, then they will be treated as one `official custodian' with respect to such funds for the purposes of12 C.F.R. § 330.8.
Applying the criteria set forth in the F.D.I.C. opinion, it would appear as though the custodians of each of the entities specified in your opinion request would each be considered an "official custodian". In part this is because the "official custodian" of each account has plenary authority over the funds allocated and the custodian maintains possession over the account. Moreover, the custodian has the authority to establish the accounts; make deposits, withdrawals and dispersements; and the custodian has the authority over the funds without the consent of other putative official custodians. These conclusions are based upon the following state statutes establishing each of the named entities:
Neb.Rev.Stat. § 2-1601; Neb.Rev.Stat. § 24-501; Neb.Rev.Stat. § 2-2001; Neb.Rev.Stat. § 23-343; Neb.Rev.Stat. §23-1601; and Neb.Rev.Stat. § 24-337.
Moreover, § 330.8(c) defines political subdivision as: The term `political subdivision' includes any subdivision of a public unit, as defined in § 3(m) of the Federal Deposit Insurance Act, or any principal department of such public unit, (1) The creation of which subdivision or department has been expressly authorized by State statute, (2) to which some function of government have been delegated by State statute, and (3) to which funds have been allocated by statute or ordinance for its exclusive use and control. It also includes drainage, irrigation, navigation, improvement, levee, sanitary, school or power districts. . . . Excluded from the term are subordinate or nonautonomous divisions, agencies, or boards within principal departments.
Each of the above named entities would appear to qualify as a political subdivision because they meet each of the criteria set forth in this regulation. First, school districts are specifically mentioned. Additionally, the other offices were established by state statute. County Extension Office, Neb.Rev.Stat. § 2-1601; County Court, Nebraska Constitution, Article V, Section 1, and Neb.Rev.Stat. § 24-501; Agricultural Associations and Societies, Neb.Rev.Stat. § 2-2001; County Hospitals, Neb.Rev.Stat. § 23-343; County Treasurer, Neb.Rev.Stat. § 23-1601; Clerk of the District Court, Neb.Rev.Stat. § 24-337. Moreover, they are within the definition because some functions of government have been delegated to these offices and funding for each is established either expressly or impliedly through state law.
Some examples of delegated functions and funding authorizations are as follows: County Extension Office: functions § 2-1602, funding § 2-1603; County Court: functions § 24-511, funding § 24-514; Agricultural Associations and Societies: functions §2-2001, funding § 2-2002; County Hospitals: functions § 23-343.75, funding § 23-343.03; County Treasurer: functions § 23-1601, funding §23-912; Clerk of the District Court: functions §24-337.01, funding § 24-337.03.
As a consequence, it appears as though if each entity maintains a separate account in its own name and its official custodian continues to exercise control over the funds in the manner specified in the F.D.I.C. legal opinion quoted herein, F.D.I.C. insurance coverage would appear to be available up to a $100,000 maximum per account.
Sincerely,
ROBERT M. SPIRE Attorney General
LeRoy W. Sievers Assistant Attorney General